UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**OPTIONS FOR COMMUNITY GROWTH, INC.,**
a Wisconsin Corporation; **HUMBOLDT HOUSE,**
**LLC,** a Wisconsin limited liability corporation;
**LARRY BUTLER,** an individual; **NEW IMAGE**
**HEALTHCARE, LLC,** a Wisconsin limited
liability corporation; and **REM WISCONSIN II,**
**INC.,** a Wisconsin Corporation,

                **Plaintiffs,**

                Case No. 03-cv-1275

   -vs-

**WISCONSIN DEPARTMENT OF HEALTH**
**AND FAMILY SERVICES; HELENE NELSON,**
in her capacity as Secretary of the Wisconsin
Department of Health and Family Services; **JAMES**
**E. DOYLE, JR.,** in his capacity as Governor of
Wisconsin, and **PEGGY A. LAUTENSCHLAGER,**
in her capacity as Attorney General of Wisconsin,

                **Defendants.**

---

## DECISION AND ORDER

---

       The plaintiffs in this matter are engaged in the business of providing residential services for persons with disabilities, generally referred to as "group homes." Plaintiffs have brought suit challenging two provisions of Wisconsin law: (1) § 62.23(7)(i)1 & 2r, Wis. Stats., which provides that a group home may not be established within 2,500 feet of another group home; and (2) § 62.23(7)(i)9, 9m & 10, Wis. Stats., which provides that municipalities may conduct a hearing in order to determine whether a group home should be closed because it poses a threat to the health, safety, and welfare of the community. Plaintiffs seek a judgment declaring that the

above-stated provisions of Wisconsin law discriminate against and have a disparate impact on persons with disabilities in violation of the Fair Housing Act ("FHA"), the Americans with Disabilities Act ("ADA"), and § 504 of the Rehabilitation Act.

The original complaint in this matter was brought against the City of Milwaukee as the sole defendant. The Amended Complaint added the Wisconsin Department of Health and Family Services ("DHFS"); Helene Nelson ("Nelson"), Secretary of the Wisconsin DHFS; James Doyle ("Doyle"), Governor of Wisconsin; and Peggy Lautenschlager ("Lautenschlager"), Attorney General of Wisconsin (collectively, the "State Defendants"). The State Defendants have moved to dismiss for lack of subject matter jurisdiction (Fed. R. Civ. P. 12(b)(1)) and for failure to state a claim upon which relief may be granted (Fed. R. Civ. P. 12(b)(6)). After this motion was fully briefed, the plaintiffs' complaint was dismissed by stipulation as against the City of Milwaukee. (*See* Docket # 66).[1]

For the reasons that follow, the State Defendants' motion to dismiss is granted.

**FACTUAL BACKGROUND**

The plaintiffs, Options for Community Growth, Inc. ("Options"), Humboldt House, LLC ("Humboldt House"), Larry Butler ("Butler"), New Image Healthcare, LLC ("New Image"), and REM Wisconsin II, Inc. ("REM"), all provide residential services for persons with disabilities in residential settings certified or licensed as either adult family homes (AFH) or community-based residential facilities (CBRF) under Wisconsin law. (Amended Complaint, ¶ 1). AFHs (one to

---

[1] After the state defendants filed their principal brief and the plaintiffs filed their response, but before the state defendants filed their reply, the City of Milwaukee filed a "Memorandum In Opposition to State Defendants' Dismissal Motion." (Docket # 35). The City wrote separately to oppose dismissal and to emphasize its particular concerns regarding any such dismissal. The State Defendants have moved to strike this submission, in part because it was untimely under the briefing procedures in the Local Rules. In light of the City of Milwaukee's dismissal from this action, as well as the motion's untimeliness under the Local Rules, the motion to strike is granted, and the City's Memorandum will not be considered by the Court.

four persons) and CBRFs (five or more persons) are designed for individuals who require intensive care and who cannot afford in-home care from outside caregivers. (Amended Complaint, ¶ 21). The City of Milwaukee regulates the density of AFHs and CBRFs by a 2,500-foot ordinance established pursuant to Wis. Stat. § 62.23(7)(i)1 & 2r. (Amended Complaint, ¶ 2). AFHs and CBRFs that are within 2,500 feet of another specified residence, and those which pose a threat to public safety under § 62.23(7)(i)9, 9m & 10, Wis. Stats., are not allowed unless the applicant pays a fee, has a public hearing and obtains a special use permit from the Milwaukee Board of Zoning Appeals ("BOZA"). (*Id.*)

Residential service providers develop AFHs and CBRFs based largely on the geographic preferences of the people they plan to serve. (Amended Complaint, ¶ 23). Individuals with disabilities and/or their guardians choose particular places to live for a variety of reasons, including the availability of specific disability services in the home, affordability, access to public or specialized transportation, proximity to churches, proximity to stores, proximity to recreational facilities, accessibility to work opportunities or vocational services, neighborhood characteristics, and closeness to friends and relatives. (Amended Complaint, ¶ 22). For these and other reasons, many Milwaukee County residents would prefer to live in the City of Milwaukee. (Amended Complaint, ¶ 23).

Residential service providers must also consider the cost of real estate and labor availability when selecting a new AFH/CBRF location. (Amended Complaint, ¶ 24). Housing costs in certain areas of the City of Milwaukee and the suburbs are cost-prohibitive. (*Id.*) Substantial areas of the County outside of the City of Milwaukee are not served by public transportation, limiting the availability of potential AFH/CBRF employees. (*Id.*)

Each year, new residential providers like Humboldt House, Butler and New Image begin serving persons with disabilities in AFHs and CBRFs in the City of Milwaukee. (Amended

Complaint, ¶ 27). There are numerous parcels of real property within the City of Milwaukee that would be suitable for use as an AFH or CBRF. However, most of those properties are within 2,500 feet of an existing facility. (Amended Complaint, ¶ 28).

Various providers operate AFHs and CBRFs in other municipalities besides Milwaukee. (Amended Complaint, ¶ 29). Many of the individuals that they serve would prefer to live in Milwaukee and the residential providers would prefer to utilize locations within the City but cannot because of the constraints imposed by the distance rule and the closure hearing procedure. (*Id.*)

## DISCUSSION

In deciding a motion to dismiss for lack of subject matter jurisdiction or for failure to state a claim, the Court accepts "all of the well-pleaded factual allegations in the complaint as true and draw[s] all reasonable inferences in favor of the plaintiff." *Tobin for Governor v. Ill. State Bd. of Elections*, 268 F.3d 517, 521 (7th Cir. 2001), *cert. denied*, 535 U.S. 929 (2002). The complaint should be dismissed "only if it appears beyond doubt that the plaintiff cannot prove any set of facts that would entitle it to relief." *Id.*

### I.  Case or Controversy

Article III of the United States Constitution gives federal courts subject matter jurisdiction over a lawsuit only if it presents a "case or controversy." Courts are guided by a familiar three-part inquiry:

> (1) the plaintiff must have suffered an "injury in fact" – an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical;
>
> (2) there is a causal connection between the injury and the conduct complained of – the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court; and

> (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1991) (internal citations and quotations omitted).

It is clear from the allegations of the complaint that the plaintiffs' alleged injury – interference with the ability to provide residential services to persons with disabilities in the City of Milwaukee – is not "fairly traceable" to any actions by the State Defendants. The 2,500-foot rule (§ 62.23(7)(i)1 & 2r, Wis. Stats.) governs the way in which municipal zoning power can be exercised by city officials with respect to group homes. The State Defendants are not involved with the rule's enforcement.[2] Similarly, the closure hearing provisions (§ 62.23(7)(i)9, 9m & 10, Wis. Stats.) are administered and enforced by the municipalities, not by the State. It is therefore not surprising that the Amended Complaint alleges only that city officials are responsible for the plaintiffs' injury, not the State Defendants. (*See, e.g.,* Amended Complaint, ¶¶ 64-74 [actions by city BOZA], 80-82 [city variance applications and threat of city interference with facilities], 84-87 [threat of shut-down of facilities by city, city hearing moratorium, city distance exception]).

In response, plaintiffs argue that the State Defendants are more than just passive bystanders. They argue that the 2,500-foot rule impedes and blocks the process of moving disabled persons out of institutions and into community-based homes. They further characterize the closure hearing rule as a "sword of Damocles" used by municipal officials to placate angry neighbors and aldermen at the expense of group home providers and disabled individuals. The State's failure to remedy this situation, plaintiffs argue, is the cause of their injury. "Plaintiffs believe the State Defendants, as a matter of law, have a duty to *eliminate existing impediments*

---

[2] The State Defendants speculate over the possibility that the Attorney General could enforce the 2,500-foot rule against a group home that established within 2,500 feet of another group home without seeking an exception from the City. (State Defendants' Brief, pp. 28-29). Plaintiffs have not alleged or argued that this unusual situation exists or is even possible in the case at bar.

affecting persons with disabilities who must live in group homes within Wisconsin in addition to refraining from actions that facilitate discrimination." (Pl. Br. in Opp. at 22) (emphasis added).

The plaintiffs' nebulous view of "causation" is directly contrary to the "long-standing rule that a plaintiff may not sue a state official who is without any power to enforce the complained-of statute." *See, e.g., Okpalobi v. Foster*, 244 F.3d 405, 426 (5th Cir. 2001) (en banc) (collecting cases). The mere existence of the group home laws does not make the State accountable in the present lawsuit. The power granted to federal courts under Article III "is not an unconditioned authority to determine the constitutionality of legislative or executive acts." *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 471 (1982). "A person aggrieved by the application of a legal rule does not sue the rule *maker* – Congress, the President, the United States, a state, a state's legislature, the judge who announced the principle of common law. He sues the person whose acts hurt him." *Quinones v. City of Evanston*, 58 F.3d 275, 277 (7th Cir. 1995) (emphasis in original). Ultimately, the State Defendants are not charged with specific duties of enforcement relating to the group home statutes, nor have they taken or threatened any enforcement-related actions against the plaintiffs. *See Okpalobi* at 426-27. Therefore, they have not caused the plaintiffs' injuries.

Plaintiffs also argue that DHFS's performance of its "statutory duty" to provide notice of a group home application to the municipality and the surrounding neighborhood, along with its performance of a variety of other statutory responsibilities,[3] is enough to trace the injury to the State Defendants. These largely ministerial functions have no connection to the plaintiffs' alleged injuries. *See, e.g., Okpalobi*, at 428 (the "appointive power of the defendants inflicts no

---

[3] *See, e.g,* Amended Complaint, ¶ 34 (monitoring the siting of group homes); ¶¶ 35 and 39 (maintaining records of their locations and operations); ¶ 37 (inspecting potential sites upon request of a municipality); ¶ 38 (ensuring that applicants for licensure comply with the statutory requirement to make a good-faith effort to form community advisory committees regarding the facilities to be licensed; ¶ 40 (assuring appropriate care and treatment for persons placed in the State Centers for the Developmentally Disabled).

injury on the plaintiffs. That is to say, it is not the Governor or the Attorney General who inflicts the claimed injury . . .").

Furthermore, plaintiffs also fail to satisfy the "redressability" requirement of the case or controversy requirement. Plaintiffs request a declaratory judgment that the 2500-foot rule and the closure hearing provisions (along with the Milwaukee Municipal Code provisions pursuant to the same) are invalid and preempted by the FHA, ADA, and § 504 of the Rehabilitation Act. (Amended Complaint, Conclusion, ¶ A). Plaintiffs further request the entry of a permanent injunction prohibiting any future application or enforcement of these provisions against facilities serving persons with disabilities. (Amended Complaint, Conclusion, ¶ B). Such an injunction would not redress plaintiffs' alleged injuries. The State Defendants have no power to restrict or prevent the City of Milwaukee from acting under the 2500-foot and closure hearing rules. "For all practical purposes, [an] injunction granted by the district court [would be] utterly meaningless." *Okpalobi*, 244 F.3d at 426.

## II. Eleventh Amendment Immunity

In response to the State Defendants' motion to dismiss, plaintiffs withdrew their claims under the FHA and ADA against DHFS. Plaintiffs still pursue such claims against the individual State Defendants.[4] Even if a case or controversy existed with regard to these claims, they would run afoul of the Eleventh Amendment.

Individual state defendants may be subject to suit under *Ex Parte Young*, 209 U.S. 123 (1908). The doctrine requires that (1) the state officials must have "some connection with the enforcement of the act in question," and (2) the state officials "threaten and are about to commence proceedings, either of a civil or criminal nature, to enforce against parties affected [by] an unconstitutional act." *Young*, 209 U.S. at 157, 158. Any "probe into the existence of a

---

[4] Plaintiffs also pursue a § 504 claim against DHFS. This claim fails for lack of subject matter jurisdiction, as discussed above.

*Young* exception should gauge (1) the ability of the official to enforce the statute at issue under his statutory or constitutional powers, and (2) the demonstrated willingness of the official to enforce the statute." *Opkalobi*, 244 F.3d at 416-17. As discussed above, the State Defendants generally are not charged with enforcement of the statute. Furthermore, the Amended Complaint contains no allegations that any of the named state officials have threatened or commenced any proceedings to enforce the 2,500-foot rule against the plaintiffs. The *Young* exception is inapplicable to the case at bar.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

1. The State Defendants' Motion to Dismiss [Docket # 30] is **GRANTED**;

2. The State Defendants' Motion to Strike [Docket # 40] is **GRANTED**; and

3. This matter is **DISMISSED**.

Dated at Milwaukee, Wisconsin, this 13th day of September, 2006.

                                             SO ORDERED,

                                             **s/ Rudolph T. Randa**
                                             **HON. RUDOLPH T. RANDA**
                                             **Chief Judge**